UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| West Bend Insurance Company f/k/a West Bend Mutual Insurance Company, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 24-cv-11182 |
| v. | ) ) | Judge April M. Perry |
| Sigler's Automotive and Body Shop, Inc., | ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This case is about an insurance dispute, and this opinion is about the appropriate forum to resolve that dispute. Plaintiff West Bend Insurance Company f/k/a West Bend Mutual Insurance Company ("Plaintiff") originally filed its complaint in the Circuit Court of Cook County, Illinois. Shortly thereafter and before it was served, Defendant Sigler's Automotive and Body Shop, Inc. ("Defendant") removed the case to federal court. Plaintiff now seeks remand pursuant to 28 U.S.C. § 1447(c), arguing that removal was improper under 28 U.S.C. § 1441(b)(2). For the reasons stated below, the Court grants Plaintiff's motion to remand.

### Background

On October 25, 2024, Plaintiff filed its complaint in the Circuit Court of Cook County, Illinois (Case No. 2024-CH-09759). Doc. 1 at 1. Its one-count complaint seeks declaratory relief pursuant to 735 ILCS 5/2-701 in relation to a loss claim Defendant filed with Plaintiff arising out of a commercial property insurance policy that Plaintiff issued to Defendant. *Id.* ¶ 2. On October 30, 2024, Defendant removed the case to federal court based upon diversity of citizenship pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *Id.* at 1. Defendant had not yet been served when

it removed. *Id.* ¶ 4. Defendant is a citizen of Illinois, and Plaintiff is a citizen of Wisconsin. *Id.* ¶ 8; Doc. 11 ¶¶ 4–5.

In its removal papers, Defendant argues that removal is proper because the parties are completely diverse, the amount in controversy exceeds $75,000, and Defendant had not yet been served at the time of its removal. Doc. 1 at 2. Because it had not been served, Defendant argues that 28 U.S.C. § 1441(b)(2) did not bar its otherwise proper removal.

On November 26, 2024, Plaintiff filed a motion to remand. Doc. 11. In its motion, Plaintiff argues that Defendant's removal was in fact barred, and that Defendant not yet being served did not make its removal proper.

## Legal Standard

With certain exceptions not applicable here, a defendant may remove "any civil action" from state to federal court in accordance with 28 U.S.C. § 1441(a) if the federal district court embracing the state court would have "original jurisdiction" over the action. Under 28 U.S.C. § 1332, federal district courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states. This basis of federal jurisdiction is commonly referred to as diversity jurisdiction. Here, the requirements of diversity jurisdiction are met.

However, 28 U.S.C. § 1441(b)(2) provides a specific limitation on cases removed on the basis of diversity jurisdiction. This subsection provides that a case otherwise removable on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id*. This rule is frequently referred to as the forum-defendant rule, or forum-defendant bar, because it stops in-state defendants from removing actions to federal court.

**Analysis**

As a citizen of Illinois, the State in which this action is brought, Defendant is a forum-defendant. But Defendant had not been served when it removed the case. The parties dispute whether the forum-defendant rule bars removal in such circumstances. Essentially this same issue on essentially the same set of facts has been raised and resolved by numerous other courts. The results differ depending on how one interprets section 1441(b)(2).

Some courts, focusing on the phrase "properly joined and served", find that the plain language of section 1441(b)(2) requires that the relevant defendant be served in order for their status as a forum defendant to defeat removal. The reasoning goes that because they have not been served, they are not "properly joined *and served* as defendants." Therefore, even though they are a citizen of the state in which the action is brought, removal is found to be proper (this reading, "Interpretation One"). *See, e.g.*, *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Texas Brine Co. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020). From here, courts have gone on to assess whether this result is so absurd that it must not be given effect, with courts split on the outcome of that analysis. *Compare Encompass Ins. Co.*, 902 F.3d at 154 (concluding that the result is not absurd), *Gibbons*, 919 F.3d at 706 (same), *and Texas Brine Co.*, 955 F.3d at 486 (same), *with Fields v. Organon USA Inc.*, No. CIV.A. 07-2922(SRC), 2007 WL 4365312, at *4 (D.N.J. Dec. 12, 2007) (concluding the opposite), *and Sullivan v. Novartis Pharms. Corp.*, 575 F. Supp. 2d 640, 643 (D.N.J. 2008) (same).

Other courts look beyond the phrase "properly joined and served" and focus their attention instead on the words leading up to it: "any of the parties in interest." *See, e.g.*, *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 318 (D. Mass. 2013); *see also Hawkins v. Cottrell*, *Inc.*, 785 F.

Supp. 2d 1361, 1369 (N.D. Ga. 2011) (similarly interpreting former version of provision). These courts conclude that the use of the phrase "any of the" implies that one or more of "the" referenced nouns (here: parties in interest properly joined and served as defendants) must already exist at the time of removal. *Gentile*, 934 F. Supp. 2d at 318. "Thus the lack of a party properly joined and served does not mean an 'exception' to removal is inapplicable, but rather means that an even more basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met." *Id.* Under this reading, removal is precluded until at least one defendant has been properly joined and served, and a case removed by a not-yet served defendant will be remanded in the absence of any other properly joined and served defendant (this reading, "Interpretation Two"). Some courts embrace Interpretation Two in its entirety, *e.g.*, *id.*, while others evoke Interpretation Two as a reasonable interpretation demonstrating that section 1441(b)(2) is ambiguous, *e.g.*, *Bowman v. PHH Mortg. Corp.*, 423 F. Supp. 3d 1286, 1293 (N.D. Ala. 2019).

This Court proposes that there is another way to interpret the provision: by taking a closer look at the word "properly" and what it means in context.

> Generally, statutory definitions control the meaning of statutory words. But when a term . . . is not defined, courts look to the plain and ordinary meaning of the term. To determine the plain meaning of a tern [sic], courts frequently look to dictionary definitions and sometimes consider the construction of similar terms in other statutes, as well as the purpose of the statute being interpreted.

*United States v. Johnson*, 47 F.4th 535, 543 (7th Cir. 2022) (cleaned up).

"Properly" is not defined in the Federal Rules of Civil Procedure. One way to interpret "properly" that seems plain enough is that it means "not improperly." Indeed, "improper" by some definitions literally means "not proper" (in certain listed ways, all in accordance with the various definitions of proper). *Improper*, MERRIAM-WEBSTER'S UNABRIDGED DICTIONARY,

https://unabridged.merriam-webster.com/unabridged/improperly; *Improper,* OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/improper_adj? tab=meaning_and_use#711590 ("Not proper; the opposite of proper."). And reading "properly" as "not improperly" is perhaps the most common interpretation in ordinary life. A parent who gets a school email instructing the parent to ensure their child is "properly dressed for the upcoming fall weather" does not assume the school is directing them to purchase on-trend fall fashions for their tot – they are quite obviously being told not to send their child in improper clothing for the cold. Similarly, to most people "properly cooked" means "not improperly cooked," and "properly installed," means "not improperly installed." And, returning to the law, there is good reason to believe that Congress's use of the phrase "properly joined and served" was directed to legislative concern that plaintiffs were improperly joining parties to civil actions for the sole purpose of destroying diversity jurisdiction. *See Gentile*, 934 F. Supp. 2d at 319-20 ("A review of the Supreme Court jurisprudence at the time of the 1948 revision … suggests the purpose of the 'properly joined and served' language was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant; incomplete service appears to have been included as a means of identifying and policing such abuse by proxy"); *Pennsylvania Manufacturers' Ass'n Ins. Co. v. Fidelitone, Inc.*, No. 23 C 16940, 2024 WL 1461459 at *6 (N.D. Ill. Apr. 4, 2024) ("there is clear consensus that Congress intended to address the fraudulent joinder problem in authoring the 'joined and served' language in 1948").

To the extent Congress could have used "properly" to send the message "not improperly," section 1441(b)(2) is ambiguous. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 32 (2012) [hereinafter READING LAW] ("A word or phrase is ambiguous when the question is which of two or more meanings applies"). The word

"properly" in the forum-defendant rule is used as an adverbial prepositive modifier and is most naturally read as having two referents: joined, and served. When attached to the verb "served", "properly" suggests that something must have occurred in a certain way; *i.e.*, joinder and service must have been proper. When "not improperly" is attached though, the phrase suggests that something must *not* have been done in a certain way; joinder and service must not have been improper.

This difference has important consequences for facts like those presented here. A party in interest not served, like Defendant, *is not* one properly served as a defendant. However, a party in interest not yet served, like Defendant's, *is* one not improperly served as a defendant. With the latter interpretation, the forum-defendant bar on removal applies. Thus, though "properly" seems straightforward enough of a word, there are two fair and permissible interpretations of it. And in this case the choice between the two determines the future of the case. If the Court reads the provision to say "not improperly. . . served" then the result is remand (this reading, "Interpretation Three").

Among the potential interpretations described above, the Court finds that Interpretation One is not persuasive, and that section 1441(b)(2) should instead be read in accordance with Interpretation Two or Interpretation Three. The Court finds Interpretation One unpersuasive primarily because it focuses too narrowly on the word "served" without any attention to how the words "any of the" or "properly" affect the entire provision's application. *See Owner-Operator Indep. Drivers Ass'n, v. United States Dep't of Transportation*, 840 F.3d 879, 888 (7th Cir. 2016) (rejecting interpretation that "read the single word 'automatically' in isolation, ignoring the rest of the statute" because that practice "runs contrary to the Supreme Court's repeated instruction to 'construe statutes, not isolated provisions'" (quoting *King v. Burwell*, 576 U.S. 473, 486

(2015)).[1] Perhaps more fundamentally though, Interpretation One is at odds with the history, context, and purpose of section 1441(b)(2), frustrating the statutory scheme in which it resides.

Numerous courts have already offered in-depth explanations as to why and how Interpretation One—essentially, permitting so-called "snap removal" as a loophole to Section 1441(b)(2)—is inconsistent with the history, context, and purpose of section 1441(b)(2), frustrates the purposes of the overall statutory scheme in which it resides, and works against the long-standing guidance that most removal statutes are to be construed narrowly. *See generally, e.g.*, *Pennsylvania Manufacturers' Ass'n Ins. Co.*, No. 23 C 16940, 2024 WL 1461459; *Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215 (M.D. Tenn. 2017); *Sullivan*, 575 F. Supp. 2d at 643–45; *Gentile*, 934 F. Supp. 2d 313; *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726 (N.D. Ill. 2007). The Court finds the reasoning in these cases persuasive.

To the extent courts have adopted Interpretation One, they have typically done so only because of the rigid contours of the absurdity canon, not because they believe that Interpretation One actually reflects legislative history or statutory context. *See Pennsylvania Manufacturers' Ass'n Ins. Co.*, No. 23 C 16940, 2024 WL 1461459, at *5 ("Virtually all courts agree that the legislative purpose of diversity jurisdiction is clearly discordant with snap removal, but many courts ruling in favor of snap removal find that such discord is not 'truly absurd' enough to supplant plain text."); *Bowman*, 423 F. Supp. 3d at 1293 ("It is prudent to recall that these [snap-removal-permissive] arguments were made in the context of finding that snap removal is not absurd—a high bar—rather than in an unweighted analysis of the rule's purpose."). Relying on the absurdity canon, courts might reasonably disagree over whether snap removal is absurd

---

[1] In addition, of the three circuit courts to arrive at this reading of the text, none considered the alternate readings suggested herein, and two faced essentially no argument on the text's plain meaning. *See Gibbons*, 919 F.3d at 705 (plaintiffs did "not even attempt to argue" plain meaning); *Texas Brine Co.*, 955 F.3d at 486 (plaintiff accepted that plain meaning allowed snap removal).

enough to override an interpretation which necessarily provides for its allowance. *See, e.g.*, *id.* (suggesting that courts finding no absurdity improperly applied the principles of statutory interpretation by looking only to the purpose of the "properly joined and served" phrase). Here though, the Court need not rely on absurdity. As explained above, there are at least two other permissible readings of Section 1441(b)(2) that would not give effect to snap removal as a loophole to the forum-defendant bar. Thus, the Court uses Section 1441(b)(2)'s history, context, and purpose, along with the other considerations referenced above, not to override the plain meaning of the statute but as indicators that, between a number of plausible meanings, the plain meaning which gives effect to snap removal is probably incorrect, and the answer instead lies in one of the interpretations that does not. *See* READING LAW 237 (acknowledging that an "oddity or anomaly of certain consequences may be a perfectly valid reason for choosing one textually permissible interpretation over another"). Other courts have concluded similarly. *See, e.g.*, *Norwegian Air Shuttle ASA*, 530 F. Supp. 3d at 768 (rejecting Interpretation One as unpersuasive given statute's purpose); *Bowman*, 423 F. Supp. 3d at 1289 (finding Interpretation One, though plausible, unsupported by the history and purpose of the forum-defendant rule).

    Between Interpretation Two and Interpretation Three, the Court need not decide because the same result follows either, and that result is supported by the context, history, and purpose of the provision. Employing Interpretation Two, removal was improper because no party in interest had yet been joined and served when Defendant removed. Employing Interpretation Three, removal was improper because Defendant was not improperly joined and served, and so its status as a forum defendant counts. For these reasons, the Court grants Plaintiff's motion to remand.

    As for Defendant's specific arguments in opposition to remand, the Court is not persuaded. Defendant adopts into its argument a framing of the decision advanced by the court in *W. Bend*

*Mut. Ins. Co. v. MSPPR, LLC*, No. 20-CV-03308, 2021 WL 463259, at *2 (N.D. Ill. Feb. 9, 2021), a case involving this same Plaintiff and essentially the same issue as raised here. Doc. 19 at 4-6. That framing describes the issue as a decision between the "plain-meaning school" of interpretation and a "purpose-based" approach. *Id*. Defendant says the plain-meaning approach is the better of the two.

As explained above, the Court's conclusion, as with the conclusions of many other courts reaching the same, *is* based on the plain meaning of the text. That its reading and reasoning incorporates considerations beyond syntax and diction alone does not make its reasoning inconsistent with a plain meaning approach; structure, context, and history are also appropriate parts of a plain meaning analysis. *See Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 278–281, 279 n.4 (2024) (a term's meaning depends on the "text, structure, context, history, and purpose" of the statute in which it resides). The court in *MSPPR, LLC* was persuaded only by Interpretation One, and that is where this Court differs.

Defendant also protests that Plaintiff engaged in bad faith forum shopping by bringing this specific case in state court in order to "avoid an established body of precedent on Illinois law, developed in the federal courts" and to "exhaust [Defendant's] ability and will to fight back." Doc. 19 at 6. Defendant's forum-shopping arguments are not persuasive.

The Court has an obligation to apply the law as written. While there may be cases in which a party forum shops in a way that is so vexing to the administration of justice or so indicative of bad faith that it warrants deeper consideration and might even point to a problem with the application of a statute which could inform a court's interpretation of that statute, that is not what happened here. Plaintiff wants to litigate in state court and Defendant wants to litigate in federal court. Each party has its reasons for preferring its choice of forum and may include

among those reasons the hope that their likelihood of achieving a favorable result is stronger in the forum of their choosing. Each attempted to direct the case to a specific forum—Plaintiff by filing in state court, and Defendant by removing to federal court. It is not appropriate for this Court to delve into the subjective hopes and dreams of the parties as a means to determine whether removal was proper; Section 1441(b)(2) requires that the case be remanded to state court.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand.

Dated: February 3, 2025

*April M Perry*
_____
APRIL M. PERRY
United States District Judge